# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 14-35884 |
| WILLIAM D. ZOLNIER | § | |
| MICHELL R. ZOLNIER, | § | CHAPTER 7 |
| | § | |
| Debtors. | § | |
| | § | |
| JAMES KENNETH COLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 16-3156 |
| | § | |
| WILLIAM D. ZOLNIER | § | |
| MICHELL R. ZOLNIER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

James Kenneth Collins filed suit against the debtors, William D. Zolnier and Michell R. Zolnier (collectively the "Zolniers") seeking to revoke their discharge pursuant to 11 U.S.C. § 727(d).[1] Trial was held on April 29, 2019, before the Honorable David R. Jones solely on the claims under 11 U.S.C. § 727(d)(1). At the conclusion of the trial, the parties agreed to take a break to determine if the adversary could be settled. A settlement was announced, and the Court held the record in abeyance pending a written settlement or further need for trial. On October 17, 2023, Judge Jeffrey P. Norman was added to this case after the retirement of Judge David R. Jones. At a status conference held on November 20, 2023, the parties agreed that no further evidence was needed, that settlement had not been consummated, they wanted to proceed with closing arguments and that the Court should enter judgment on the record. Closing arguments were heard on January 4, 2024.

## PROCEDURAL BANKGROUND

On October 28, 2014, the Zolniers filed for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code, Case No. 14-3588.

---

[1] The Complaint also included claims under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), (d)(1), and (d)(2).

On July 10, 2015, Debtors received a discharge.[2]

On May 31, 2016, the Chapter 7 Trustee noticed Mr. Zolnier for a Rule 2004 examination set for June 10, 2016.[3]

This adversary proceeding was timely filed on July 10, 2016.

## TRIAL

In closing arguments, counsel for the plaintiff reiterated the testimony from plaintiff James Collins ("Collins") that he first became aware of the debtors' fraud in June of 2016:

> A Okay. Regarding the fraud in the estate, I wasn't aware of until, let's see, Bill testified in his 2004 exam, June of 2016. And that was the first time I was made aware that he had -- he didn't have a corporation.[4]

Collins also testified that "[M]y contention is that I was made aware of the fraud in June of 2016. That's my contention."[5] At trial, Collins explained that prior to the filing of the bankruptcy petition, he received a judgment for eviction against the defendants. In attempting to execute on that judgment, he discovered that Mr. Zolnier had a corporation, which hampered those execution attempts.[6] Collins went on to testify that prior to the 2004 exam held in June 2016, he had relied on the schedules and the statement of financial affairs that were filed by the defendants. In those documents, the defendants stated that there was a corporation and that assets had been transferred to that corporation.

Michell R. Zolnier agreed that the schedules listed the corporation, Montgomery Mattresses and Furniture, with a 100 percent ownership and zero value. However, she explained that she was separated from her husband at the time and requested the information from him to complete the schedules.[7] She then testified that she was not aware of any property that was transferred into the corporation.[8] The Court then clarified that although she stated that she had no knowledge of any transfers, that $750 and $12,000 were listed on her schedules as being transferred to Montgomery Mattresses Furniture and More, and she agreed that she relied on her husband's information and signed the schedule.[9]

---

[2] Case No. 14-35884, ECF No. 31.
[3] Case No. 14-35884, ECF No. 71.
[4] ECF No. 56, Trial Transcript, page 66 of 208, lines 18-21.
[5] ECF No. 56, Trial Transcript, page 79 of 208, lines 18-19.
[6] ECF No. 56, Trial Transcript, page 84 of 208, lines 3-23.
[7] ECF No. 56, Trial Transcript, page 174, lines 3-12.
[8] ECF No. 56, Trial Transcript, page 186 of 208, lines 17-21.
[9] ECF No. 56, Trial Transcript, page 187 of 208, lines 9-25.

The testimony of William Zolnier regarding the corporation was critical. In response to a question whether he agreed that he asserted in the bankruptcy filing that he owned a corporation, he responded that "[W]ell, I initially set it up, but never completed it."[10] The exchange with the Court led up to the break in trial. The relevant testimony is as follows:

> The Court asked, "you said on your schedules and statements that $12,000 worth of furniture and mattresses went into the corporation. Did that happen?" [Zolnier] "No, I would have to say no to that." [The Court]: "So you lied on your schedules?" [Zolnier] "Well, not lied on the schedules. In my eyes, I was recommended to open up a corporation by my trial attorney." [The Court] "But you filed statements under penalty of perjury that said you did. And you never took any steps to fix it." [Zolnier] "Well, I just, the way I looked at it honestly, was I submitted what I was going to do, but then not really operating under the corporation. I might have continued to operate under the DBA name. Then the $12,000, that was just basically inventory that was left and brought to the new location when I moved to the new location. In other words, I never really" [The Court] "No, you need to stop talking."[11]

After a short break, the parties announced a settlement, but it was never reduced to writing.

## CLOSING ARGUMENTS

Collins' counsel emphasized that on April 29, 2019, in the subject adversary bench trial, presiding Judge David Jones elicited express sworn testimony from the Zolniers that they secreted assets from the bankruptcy estate and lied on their schedules under the penalty of perjury.[12] The Zolniers did not prepare their schedules and statements with scrupulous accuracy and honesty. They did not provide complete, truthful, and reliable information at the outset of the proceedings nor make an attempt to correct the material errors. They moved their personal assets to a fake corporation without consideration. They then secreted those assets from their creditors by filing a false oath. It was not until the bankruptcy trustee conducted a Rule 2004 examination after the debtors' discharge that this was discovered. Standing alone, the Court might excuse one of these failures. But, in totality, the Court must set-aside the discharge.[13] Notably, after learning the above facts at trial, in lieu of setting aside the Zolniers' Chapter 7 discharge, Judge Jones suggested the

---

[10] ECF No. 56, Trial Transcript, page 196, lines 14-16.
[11] ECF No. 56, Trial Transcript, page 196, lines 23-25 and page 197, lines 1-25.
[12] ECF 56, Trial Transcript, pages 187, 196-198).
[13] *See In re Dias*, 95 B.R. 419, 420 (U.S. Bankr. North District of Texas, Dallas, Nov. 9, 1988).

parties attempt to settle outside the courtroom prior to proceeding with the remainder of the trial or rendering judgment.[14]

Michell Zolnier's attorney also requested that this Court look to the trial transcript, specifically where Judge David Jones stated on the record that counsel had "done nothing to push me in any direction about Ms. Zolnier, nothing." Further, that "you've tried to push Mr. Zolnier off on to Mrs. Zolnier. Not working."[15] Lastly, that "I want to make it very clear, have not heard anything with respect to Mrs. Zolnier that moves me at all."[16]

William Zolnier appeared pro se and reiterated his testimony from the trial.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and the standing order of reference of the District Court. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J). The Bankruptcy Court has Constitutional authority to enter a final order with respect to this Complaint. The right to a bankruptcy discharge under 11 U.S.C. § 727 has no equivalent in state law, thereby rendering the United States Supreme Court's opinion in *Stern v. Marshall* inapplicable. In the alternative, the right to a bankruptcy discharge is an essential part of the public bankruptcy scheme and triggers the "public rights" exception.[17] Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is an action under 11 U.S.C. § 727(d)(1) seeking revocation of the discharge order entered in this case.

## LEGAL ANALYSIS

Section 727(d)(1) of the Bankruptcy Code states: (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if— (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;.[18]

---

[14] Doc. 56, p. 198, lns. 19-25; Doc. 56, p. 201, lns. 19-24.
[15] ECF No. 56, Transcript, page 199.
[16] ECF No. 56, Transcript Page 200 of 208, lines 6-8.
[17] *See Stern v. Marshall*, 564 U.S. 462, 131 (2011); *See also In re Muhs*, 2011 WL 3421546 (Bankr. S.D. Tex. 2011).
[18] 11 U.S.C. § 727(d)(1).

Because the principal purpose of the Bankruptcy Code is to afford a debtor with a fresh start, the revocation of a discharge is "an extraordinary remedy to be sparingly applied."[19] Thus, relief under 727(d) is construed strictly against any objecting party and liberally in favor of the debtor.[20] It is Collins' burden to prove that he lacked knowledge of the debtor's fraud prior to the deadline for objecting to discharge. 11 U.S.C. §§ 521(1) and (3) impose a duty on the debtor to disclose assets as a matter of law. Moreover, a "party attempting to revoke a debtor's discharge under 727(d)(1) must show 1) the discharge was obtained through fraud of the debtor, 2) the party requesting the revocation did not know of the debtor's fraud until after the discharge was granted, and 3) grounds exist which would have prevented the debtor's discharge had they been known."[21]

The Zolniers testified that the schedules showed that they owned a corporation with zero value, and that they transferred $12,000 worth of assets to that corporation. It was also clear that nothing was actually transferred to the corporation, making those schedules false. The schedules were not amended to correct this information prior to the discharge. The trial testimony shows that the Zolniers' actions were taken knowingly, that the fraud was material, and in William Zolnier's testimony, with a fraudulent intent. The Court therefore finds that Collins has met his burden.

The Court finds that this was not an innocent mistake. The remaining issue is when did the plaintiffs learn of the fraud, as it must be after the discharge. Here, it was not until the Chapter 7 Trustee held a 2004 exam in June of 2016 that the Trustee and Collins discovered the fraud, almost a year after the discharge. Thus, the Court concludes that the William Zolnier's discharge should be revoked.

As stressed by Michell Zolnier's counsel, the trial court did not believe that William Zolnier's testimony should impact Ms. Zolnier. However, that was prior to a recent United States Supreme Court decision. The United States Supreme Court recently opined that where debtors "were found jointly responsible in state court… in a project in which [one] debtor was [allegedly] largely uninvolved… [the code] precludes debtor from discharging in bankruptcy a debt obtained by fraud, regardless of her own culpability, because [it turns] on how the money was obtained, not

---

[19] *In re Darby*, 376 B.R. 534 (Bankr. E.D. Tex. 2007) *citing In re Peterson*, 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006).
[20] *Id., citing In re Landry*, 350 B.R. 51, 56 (Bankr. E.D. La. 2006).
[21] *Wilkerson v. Debaillon*, 2013 WL 3803972 (W.D. La July 18, 2013), *citing United States v. Harrison*, 366 B.R. 656, 660 (S.D. Tex. 2007) aff'd 273 F. App'x 315 (5th Cir. 2008) (internal citations omitted).

who committed fraud to obtain it."[22] The reasoning is that "the fraud of one partner… is the fraud of all because '[e]ach partner was the agent and representative of the firm with reference to all business within the scope of the partnership.'"[23] And the reason for this rule was particularly easy to see because "the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business." [24]  Unfortunately for Michell Zolnier, she also received the benefit of the fraud, and therefore her discharge must also be revoked.[25]

## CONCLUSION

Accordingly, the Court finds that all of the elements for revocation of discharge under 11 U.S.C. § 727(d)(1) have been demonstrated by a preponderance of the evidence, and the discharge granted to the Zolniers should be revoked.

**THEREFORE, IT IS ORDERED** that the Discharge of Debtor entered on July 10, 2015, at ECF No. 31 is revoked.

SIGNED 01/18/2024

_____
Jeffrey Norman
United States Bankruptcy Judge

---

[22] *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 667 (2023).
[23] *Id*. at 672.
[24] *Id.* at 674.
[25] The Court stresses that is not happy with this result but feels bound by Supreme Court precedent.  The record as interpreted by this Court reflects that Judge Jones **would not have revoked the discharge of Ms. Zoliner**.  Unfortunately, this matter was heard by Judge Jones prior to the opinion in *Bartenwerfer* and so he was unaware of its holding.